Jay W. HOLLINS, Appellant,

v.

DEPARTMENT OF CORRECTIONS, STATE OF IOWA, Appellee.

No. 91–2687.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1992.

Decided July 1, 1992.

Rehearing and Rehearing En Banc Denied Aug. 7, 1992.

See also 397 N.W.2d 701.

Gary L. Robinson, Cedar Rapids, Iowa, argued, for appellant.

Thomad D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Jay W. Hollins appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1988). Hollins was convicted of first-degree murder and sentenced to life imprisonment. He argues, as he did in the district court, that the state trial court violated his constitutional rights by: (1) failing to sever his case from that of his codefendant; (2) admitting certain hearsay testimony; and (3) failing to grant his motion for a judgment of acquittal. We affirm the judgment of the district court.[1]

Hollins was charged with knowingly aiding and abetting his co-defendant, Ronald Brown, in killing Alvin R. Davidson, a Waterloo, Iowa, attorney. Hollins and Brown were tried together and a jury found both guilty of first-degree murder. Hollins was sentenced to life imprisonment. The Iowa Supreme Court affirmed the conviction. *State v. Hollins*, 397 N.W.2d 701 (Iowa 1986).

Hollins brought this habeas corpus action in district court after exhausting his remedies in state courts. The district court held that the trial court's failure to sever Hollins' trial from Brown's did not violate Hollins' constitutional rights. *Hollins v. Iowa Dep't of Corrections*, No. 88–2042, slip op. at 4 (N.D.Iowa July 8, 1991). The district court stated that in such cases Hollins bore the burden of establishing that a reasonable jury would have reached a different result in a separate trial because it could not be expected to separately consid-

1. The Honorable Donald E. O'Brien, Chief Judge of the United States District Court for the Northern District of Iowa.

er the evidence against each codefendant. *Id.* at 3.

The district court rejected the argument that "the complexity and volume of evidence" had prevented the jury from separately considering the evidence offered against each codefendant. *Id.* It pointed out that the trial, although long, "involved only two defendants, each charged with one crime." *Id.* It also cited the fact that the trial court had instructed jury members during the trial and before deliberations that they should be careful to "compartmentaliz[e] the evidence" against each defendant. *Id.* The district court also agreed with the Iowa Supreme Court that severance was not required because of alleged conflict between Hollins' and Brown's defenses. *Id.* at 4. The district court concluded that Brown's and Hollins' strategies did not center around efforts to incriminate each other and that the defenses were not so irreconcilable as to render the trial fundamentally unfair. *Id.*

The district court also concluded that any error by the trial court in admitting certain testimony challenged as hearsay did not violate the Confrontation Clause or deny due process. *Id.* at 6. It also held that the evidence against Hollins was sufficient to support conviction. *Id.* at 8.

## I.

■ Hollins challenges the Iowa trial court's failure to sever his trial from Brown's, alleging that Brown's defense implicated Hollins to the extent that Hollins was unable to obtain a fair trial. He also contends that the amount and nature of the evidence and the circumstances of the crime were such that the jury could not have separated the evidence as it related to each defendant.

A man wearing a mask and an army field jacket shot Davidson as he was about to enter a Waterloo hotel. About a month after the murder, charges were filed against Hollins, Brown, and an alleged accomplice, Ennis Montgomery. Montgomery agreed to testify against the other two in exchange for immunity.

Montgomery testified that while he waited in a van parked in an alley near the hotel, Brown disappeared with a shotgun. A few minutes later, Montgomery heard a shotgun blast. Then he saw Brown run down the alley, drop the shotgun in a dumpster and jump in the van. Brown cursed the fact he had been unable to shoot Davidson more than once. Evidence tied Brown to Hollins, suggesting that Brown arrived in Waterloo at Hollins' request, and that Brown was a close friend of Hollins' brother, Jan, who was in jail awaiting trial on a charge of attempting to murder Davidson in an earlier incident. Montgomery also testified that the killing was planned by Hollins and Brown. Hollins wanted Davidson killed because of conflicts within the Hollins' family. Davidson was married to Hollins' sister, Virginia Hollins Davidson.

■ In challenging the trial court's failure to sever his trial from that of his codefendant, Hollins bears a heavy burden. Regardless of the state law governing severance in state trials, this court will not grant relief to a habeas petitioner on this issue unless he can establish that the failure to grant severance rendered the trial "fundamentally unfair." *Johnson v. Dugger,* 817 F.2d 726, 728 (11th Cir.1987).

In affirming Hollins' conviction, the Iowa Supreme Court rejected his arguments regarding severance "[f]or the same reasons" it stated in its decision in Brown's appeal. *Hollins,* 397 N.W.2d at 707. In *State v. Brown,* 397 N.W.2d 689 (Iowa 1986), the Iowa Supreme Court stated that "neither Brown nor Hollins made any serious attempt to place responsibility for the murder on the other." *Id.* at 696. In fact, the "core" of Brown's defense was alibi. *Id.* "Nothing in the defenses offered was so irreconcilable and mutually exclusive that in accepting one defendant's defense the jury necessarily would have been forced to reject the other defendant's defense." *Id.* The district court reached the same conclusion, observing that one witness testified that Brown was in a bar at the time of the shooting. Slip op at 4.

Hollins has not persuaded us that the trial court's failure to sever rendered the trial fundamentally unfair. The trial record shows that: (1) Hollins denied any involvement with the murder; (2) Brown, although not testifying, also tried to show he was not involved and tried to fix blame on a third party, Joe Morrissey. The efforts of Brown's attorney, when cross-examining Morrissey, to link Morrissey with Hollins are not sufficient to convince us that the two defenses were so irreconcilable as to require separate trials.

 We similarly are not persuaded by Hollins' argument that the length and complexity of the trial required severance. This trial involved two defendants, each charged with one count. The trial court made scrupulous efforts to instruct the jury about compartmentalizing evidence. We conclude that the district court did not err in denying a writ of habeas corpus based on the trial court's failure to sever.

## II.

Hollins next argues that the trial court's admission of certain statements that he challenges as hearsay violated his right to due process. The statements were made by an unidentified female who called a woman named Debra Jackson. Jackson turned the receiver over to a man, Snookie Hodges, who then spoke to the caller. In response to the unidentified caller's request, Jackson and Hodges helped procure a gun for Hollins.[2] Jackson and Hodges both testified in court, although the caller did not.

Questions concerning the admissibility of evidence are not cognizable in federal habeas proceedings "unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process." *Urquhart v. Lockhart,* 726 F.2d 1316, 1318 (8th Cir.1984). *See also Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431

(1974); *Mercer v. Armontrout,* 844 F.2d 582, 587 (8th Cir.), *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988).

We conclude that the admission of these statements was not so prejudicial as to deny due process rights, as Hollins argues. Hodges, who helped Jackson obtain the gun, testified that Hollins later thanked him for the weapon. With Hodges' testimony directly connecting Hollins with the murder weapon, we fail to see how the admission of the unidentified caller's statements so prejudiced Hollins as to amount to a denial of due process.

Finally, Hollins raises an attack on the sufficiency of the evidence. This argument is without merit.

We affirm the district court's denial of the petition for a writ of habeas corpus.

---

**2.** Hollins challenges as hearsay Jackson's and Hodges' testimony concerning the caller's request, including Jackson's testimony that she and Hodges discussed (in response to the call) "[w]here could [they] get a gun from" and that

the gun was "[f]or Jay Hollins." Hodges testified that the caller told him "[t]hat Jay felt as though he was in trouble and might need some protection."