HUNTER, Appellant, v. KUETHER and another, Respondents.

*January 29—February 27, 1968.*

142

For the appellant there was a brief by *Kersten & Mc-Kinnon,* attorneys, and *Arlo McKinnon* of counsel, all of Milwaukee, and oral argument by *Arlo McKinnon.*

For the respondents there was a brief by *Ray T. Mc-Cann,* attorney, and *Leonard L. Loeb* of counsel, both of Milwaukee, and oral argument by *Mr. McCann.*

ROBERT W. HANSEN, J. Plaintiff-appellant seeks an overturning of the jury verdict denying all damages. Plaintiff-appellant asserts that undisputed evidence in the record required the jury to assess some damages. Of such testimony, the trial court, in denying motions for a new trial, stated: "This court is of the opinion that these jurors disregarded it based on the other testimony, the testimony, very frankly, from the plaintiff himself. This court is satisfied that the plaintiff's testimony was inconsistent at times and contradictory at times not only contradictory in the pleadings, contradicting himself right on the witness stand in the same sequence of questions and answers. This court is of the opinion that the jury exhibited no perversement."

In the area of evaluating direct testimony and determining the credibility of witnesses, both the jury and the trial court have great advantages over an appellate review tribunal. Particularly when inconsistencies and contradictions develop in testimony of a witness, the trial judge and the jury have the opportunity to observe the witness on the witness stand, his demeanor, his manner of testifying, his reaction when confronted with inconsistent

statements. The appellate court, restricted to a transcript of proceedings and arguments by counsel, has a less secure basis for determining that testimony, false in one particular, is false in others.

When it comes to the matter of credibility or basic believability of a particular witness, there is particular reason for holding firm to the classic rule that, if there is any credible evidence which under any reasonable view supports a jury finding as to damages, especially when the verdict has the approval of the trial court, this court will not disturb the finding.[1] Where credibility is so obviously the primary factor involved, there is every reason to remember and resolve that a trial court judge's determination that a damage verdict is supported by the evidence will be set aside only when there is an evident abuse of discretion.[2] We find no evidence of abuse of discretion in this case on the part of either judge or jury.

There is no dodging the fact that the jury in this case was not convinced by the evidence produced on behalf of the plaintiff that he sustained any compensable injuries as a result of the automobile accident of November 21, 1960. The trial court instructed the jury in this case: ". . . that the burden rests upon each person claiming damages to convince you by the greater weight of the credible evidence to a reasonable certainty that such person has sustained damages in the respect inquired about and the amount thereof . . . the law places the burden of proof upon the plaintiff to establish to a reasonable certainty the damages sustained by him. If you find the evidence in this case to be so uncertain that you cannot do more than merely guess, speculate or conjec-

[1] *Puls v. St. Vincent Hospital* (1967), 36 Wis. 2d 679, 154 N. W. 2d 308; *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 301, 302, 151 N. W. 2d 86.

[2] *Ostreng v. Lowrey* (1968), 37 Wis. 2d 556, 155 N. W. 2d 558; *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 606, 607, 148 N. W. 2d 65.

ture as to whether or not the plaintiff, Donald Hunter, suffered damages, you cannot allow damages in this case on account of such claimed result of the collision or the personal injuries sustained therein. The law permits and allows only such damages as have been proved to a reasonable certainty to result from the collision." The jury clearly found that such burden of proof on the part of the plaintiff had not been met.

One of the weaknesses that sunk the ship for the plaintiff with the jury was not of his creation. It involved a number of incidents, one prior to the accident here involved, raising questions as to where and how often he had sustained injuries, particularly back injuries. The sequence in time goes like this:

In September, 1955, the auto plaintiff was driving was hit in the rear by another car and he claimed the identical areas of his body were injured in 1955 as in 1960.

On November 21, 1960, the accident on which he based his claim in this case.

In March, 1961, the taxi plaintiff was riding in came to a sudden stop and he fell to the floor and struck his lower back.

In December, 1961, the auto plaintiff was driving ran into a tree and he was hospitalized for two and one half days.

In August, 1965, the auto plaintiff was driving was hit in the rear by another car.

In September, 1965, plaintiff backed his car into another car stopped in his driveway.

In May, 1966, plaintiff, while a pedestrian, was struck by an auto and sustained a lower back injury.

This succession of unfortunate occurrences presented questions of fact to the jury as to when and where the defendant had injured his back. Far more complicating is testimony given by the plaintiff himself. For example, defendant's counsel read into the record a portion of interrogatories plaintiff filed in an action for personal

injuries in Chicago, Illinois. This lawsuit in Illinois was based upon the sudden stop of the taxicab in March, 1961. In these interrogatories, plaintiff had stated that he sustained a loss of income from March 20, 1961, to February 5, 1963, due to injuries received in the March 20, 1961, accident in Illinois. While he stated that he considered his answers given in the Illinois case to be erroneous and that he would correct them when the proper time came in the Illinois lawsuit, it is clear that such admission of incorrectness in answers given goes to the heart of his credibility as a witness. *Falsus in uno, falsus in omnibus.* At least, so a jury had a right to conclude.

At the opening of trial, before the jury was sworn, plaintiff's counsel moved to strike plaintiff's allegations of impairment of plaintiff's earning capacity and resultant loss of past and future income. The motion was granted. The trial court permitted defendant's counsel to impeach the plaintiff on the claimed loss of income despite the allegation having been stricken from the complaint. The basis of the court's ruling was that such cross-examination went to the matter of credibility. At an adverse examination in this case, the plaintiff had testified that he had not been kept away from his office for any reason other than the accident involved in this case. At the trial, defendant's counsel read portions of an affidavit plaintiff had filed in court stating that a skin disorder and a virus had impaired his capacity to work from June to October in 1962. Plaintiff stated that he had forgotten this affidavit at the time of the adverse examination. In addition to the interrogatories in the Illinois lawsuit, defendant's counsel used the skin disorder affidavit to attack the credibility of the plaintiff. Plaintiff stated that, at the time of the adverse, he believed the statement he made to be true, but, after hearing defense counsel's statements, he recalled that there were other ailments which had kept him away from work.

Plaintiff's counsel contends that the withdrawal of the claim for damages based on asserted loss of income made all such inquiries immaterial and that it was error for the trial court to permit such cross-examination. However, the defendant's attorney had every right to attack the answers given at the adverse examination and to expose them as false. The inconsistent and irreconcilable statements made in the affidavit and interrogatories were material and admissible on the issue of the credibility of the plaintiff as a witness. The striking of the claim for damages due to loss of earnings made immaterial inquiries into whether the plaintiff had sustained losses in earnings. It did not make immaterial the question of whether he had testified falsely at the adverse examination. Withdrawal of the claim of income losses could not be used to shield the plaintiff from cross-examination as to whether he had told the truth in answers given at the adverse examination.

Plaintiff's self-destruction of his credibility as a witness affects the medical testimony presented on his behalf. Plaintiff's counsel argues that the jury was required to require the defendants to pay for medical and physiotherapy bills prescribed by the doctors he consulted from the date of the accident involved in this case to November 11, 1966. There was medical expert testimony that the bills were fair and reasonable. However, it is not their reasonableness alone which is at issue. The question of whether these expenses were necessarily incurred as a result of injuries sustained on November 21, 1960, rests on the credibility of the plaintiff's testimony. His statements to the doctors as to what injuries were sustained stands on no firmer foundation than his statements to the jury.

Three treating physicians are involved, one of whom took the witness stand during the trial. Plaintiff testified that he saw Dr. Coles on December 8, 1960, and that Dr. Coles prescribed treatment for him. Plaintiff

testified that he saw Dr. Bullis in August, 1961, and that Dr. Bullis prescribed treatment for him. Plaintiff testified that he telephoned Dr. Montgomery on the day of the accident, explained his symptoms to him and that Dr. Montgomery prescribed treatment for him. He did not see Dr. Montgomery until August, 1963. At that time, plaintiff gave Dr. Montgomery a detailing of events from September, 1955, up to August, 1963. Plaintiff did not mention therein the sudden stop taxi accident of August, 1961, nor the hitting the tree accident of December, 1961. Dr. Montgomery had treated plaintiff after his September, 1955, accident, X rays taken in 1955 revealing a reduction in the last space between the vertebrae in the spine. Answering a hypothetical question, Dr. Montgomery concluded that plaintiff's present (August, 1963) lower back pain and left sciatic neuritis were the result of injuries received in the November 21, 1960, accident.

However, Dr. Montgomery testified that, in expressing his opinion, he had accepted as truthful the history that plaintiff had given him. It was clear and he conceded that on the basis of what he had heard during the trial such history furnished by the plaintiff had not contained all incidents that were significant in reference to plaintiff's back condition. He did not recall that plaintiff had ever mentioned to him the sudden stop taxi accident of 1961 or the tree hitting incident of 1961. Moreover, Dr. Montgomery testified that he was not aware of the force of the impact in the November 21, 1960, accident. He stated that force of impact would be important in determining probability of resultant injury. Actually, testimony at the time of trial revealed that the impact involved in the November 21, 1960, accident was so slight that plaintiff's car was hardly moved, defendant's car was not damaged and plaintiff's car damaged only by bumper and bumper guard dents of less than one inch each. It is cultivating the obvious to state the doctor was not present when defendant's auto rear ended plaintiff's

auto on November 21, 1960. His medical conclusions were based on what the plaintiff told him as to what happened. On the credibility and correctness of the plaintiff's statements to him, the doctor based his testimony. It is exactly that credibility and correctness which the jury found not to exist. When the foundation is removed, the whole structure collapsed. It is no reflection on the doctor to state that he relied upon statements made by the plaintiff. He had no alternative. Once the plaintiff had trapped himself in numerous inconsistencies and contradictions, the jury was not required to accept such statements by plaintiff. The credibility of the person making the statement was for the jury to determine. It chose not to believe him. Under the facts of this case, it certainly had the right to do just that.

The jury finding that there were no compensable injuries and no resultant damages sweeps away additional appellant objections to procedures followed. During closing arguments, the trial court sustained defense counsel's objection to plaintiff's counsel mentioning that the defense had not produced as a witness a doctor who had examined the plaintiff in 1963. The trial court properly limited plaintiff's closing argument to matters discussed in the defendant's argument. After the trial court had instructed the jury and the jury had left the courtroom, plaintiff's counsel orally requested that the absent witness instruction [3] be given. The request was belated and not in writing.[4] It was properly denied. A reference by defendant's counsel in his closing argument to the plaintiff having an "ex-wife" is objected to as incorrect and prejudicial. The reference was at the time inaccurate;

---

[3] See Wis J I—Civil, Part I, 410.

[4] Section 270.21 Stats., provides: ". . . Requests for instructions to the jury must be submitted in writing before the argument to the jury is begun, unless in the opinion of the trial judge, special circumstances excuse failure to submit such requests."

the remark was unnecessary, unfortunate but not prejudicial. It did not affect at all the basic issue of the credibility or lack of credibility of the plaintiff. Plaintiff's ship was scuttled by what he himself said on the witness stand. It was not sunk by what was said about him in the closing arguments.

*By the Court.*—Judgment affirmed.