_____

No. 95-1941
_____

Michael Jenner,                        *
                                       *
                Appellant,             *
                                       *
      v.                               *   Appeal from the United States
                                       *   District Court for the
Joe Class, Warden, South Dakota        *   District of South Dakota.
State Penitentiary; Mark W.            *
Barnett, South Dakota Attorney         *
General,                               *
                                       *
                Appellees.             *


_____

Submitted:  November 16, 1995

Filed:  April 1, 1996
_____

Before HANSEN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Michael Jenner was found guilty by a South Dakota state court jury
of premeditated murder, conspiracy to commit murder, and accessory to
murder.  His convictions were affirmed on all direct appeals.  He filed a
petition for writ of habeas corpus, which the district court[1] denied.  On
appeal, Jenner contends that he was provided ineffective assistance of
counsel and his trial was fundamentally unfair because of the trial court's
refusal to sever his trial from that of his co-defendant.  He also argues
that the

_____

     [1]The Honorable Richard H. Battey, United States District Judge
for the District of South Dakota.

evidence was insufficient to convict him and he was denied due process because of excessive and prejudicial trial security. We affirm.

The facts of this case are set forth in the South Dakota Supreme Court opinion, State v. Jenner, 434 N.W.2d 76, 77-79 (S.D. 1988). We will not restate the facts in detail, but will discuss those facts relevant to the issues raised by Jenner.

Jenner's convictions arose from the execution-style murder of Jackie Sjong, a prospective witness in a California murder prosecution. Ricky Fenstermaker, a member of the Vagos motorcycle club, stabbed a hitchhiker to death on a California highway. Sjong, Fenstermaker's cousin, witnessed the stabbing. Jenner, the president of the Los Angeles chapter of the Vagos, along with co-defendant Richard Elliott, shot Sjong near the KOA campground in Sturgis, South Dakota, while the group was attending the annual Black Hills motorcycle rally. Jenner was convicted of first degree murder, conspiracy to commit murder, and accessory after the fact to murder. After Jenner exhausted his state appeals, he petitioned for habeas corpus relief. The district court denied the writ, and Jenner appeals.

**I.**

Jenner raises several claims of ineffective assistance of counsel. He claims his trial counsel was ineffective on several grounds, including counsel's: (1) failure to object to alleged vouching for prosecution witness Fenstermaker; (2) failure to explain the presence of a Fenstermaker family photograph in Jenner's wallet; (3) failure to fully impeach Fenstermaker; (4) failure to object to testimony that Jenner had been previously incarcerated; (5) failure to propose an accomplice instruction; (6) failure to object to an attack on defense counsel; (7) failure to introduce evidence that Jenner does not smoke; (8) failure to

-2-

object to the prosecution's questioning of Jenner about not calling alibi witnesses; and (9) failure to object to the prosecution's questioning Jenner whether certain witnesses were lying.

Our review of counsel's representation is "highly deferential." Strickland v. Washington, 466 U.S. 668, 689 (1984). To establish ineffective assistance of counsel, Jenner must show that trial counsel's performance was deficient and that Jenner was prejudiced. Id. at 687; Flieger v. Delo, 16 F.3d 878, 886 (8th Cir.), cert. denied, 115 S. Ct. 355 (1994). Counsel's representation is deficient if it falls "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel's decisions are presumed reasonable and "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable . . . ." Id. at 690. Strickland explained that to show prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Court subsequently refined the prejudice inquiry, explaining that the test for demonstrating prejudice is not solely a matter of outcome determination, but rather, whether the trial was fundamentally unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369-71 (1993); Battle v. Delo, 19 F.3d 1547, 1554 (8th Cir. 1994).

Jenner first claims that his counsel was ineffective in failing to object to the prosecution's alleged vouching for Fenstermaker.[2] During Fenstermaker's direct examination, the prosecutor asked Fenstermaker if he was required to testify truthfully as a condition of his grant of immunity, and "that the only way that [he] could get in trouble testifying here in this

---

[2]Jenner also argues he was denied due process because of the prosecution's vouching for Fenstermaker. Because we conclude no improper vouching took place, we reject Jenner's due process argument.

-3-

case . . . would be if [he] would come in and not tell the truth."  In closing argument, the prosecutor also stated that Fenstermaker had no motive to lie, because if he did lie, his immunity would be cancelled. Jenner contends these two instances amounted to improper vouching.

The South Dakota Supreme Court rejected this argument in Jenner's state habeas appeal, concluding there was no improper vouching.  Jenner v. Leapley, 521 N.W.2d 422, 427-28 (S.D. 1994).  We have reviewed the testimony and argument and hold no improper vouching occurred.  The prosecutor did not place the prestige of the government behind the witness, suggesting that the prosecutor had some special knowledge, not known to the jury, that the witness was testifying truthfully.  See United States v. Magee, 19 F.3d 417, 421 (8th Cir.) (similar statements held not to be improper vouching), cert. denied, 115 S. Ct. 343 (1994).  The prosecutor simply relayed the terms of Fenstermaker's immunity agreement.  See Id. Thus, trial counsel's failure to object to the questioning and statements was well within the range of professionally reasonable judgment and does not constitute ineffective assistance of counsel.

Jenner next contends that his trial attorney was ineffective for failing to present certain evidence.  During the state's rebuttal argument, the prosecutor raised the question of how Jenner obtained a photograph of Fenstermaker's child and former girl-friend, implying that Jenner got the photograph from Sjong after he killed him.  Jenner contends his trial counsel was ineffective for failing to explain that he actually got the photograph from Fenstermaker's former girlfriend.  Jenner also complains about counsel's failure to establish that he did not smoke.  Two cigarette butts were found at the murder scene.  There was testimony at trial that someone with the same blood type as Sjong smoked one of the cigarettes, and that Elliott did not smoke.

The South Dakota Supreme Court rejected these arguments.  The

court ruled that the prosecution improperly argued in rebuttal that Jenner may have obtained the family photograph from Sjong's body after killing him because these comments went beyond the scope of issues raised by Jenner's closing argument. 521 N.W.2d at 429. Nevertheless, the court found no prejudice. Id. Similarly, the court concluded that counsel's failure to introduce evidence that Jenner did not smoke did not constitute deficient performance or prejudicial error. Id. at 430.

Jenner did not receive ineffective assistance of counsel for failure to present evidence. First, a prosecutor's presentation of new argument during rebuttal is an error of state law, and does not rise to the level of a constitutional violation. See Whitmore v. Lockhart, 8 F.3d 614, 625 (8th Cir. 1993); Berrisford v. Wood, 826 F.2d 747, 749 (8th Cir. 1987), cert. denied, 484 U.S. 1016 (1988). Second, counsel's failure to present evidence that Jenner received the photograph from Fenstermaker's girlfriend was not prejudicial. The prosecutor did not emphasize the photograph and did not misstate the evidence. Jenner had the photograph in his wallet when he was arrested. See United States v. Felix, 867 F.2d 1068, 1075 (8th Cir. 1989).

Similarly, Jenner was not prejudiced by trial counsel's failure to establish that he did not smoke. There was no evidence linking the cigarette to Jenner, only evidence that one of the cigarettes could have been Sjong's. Evidence that Jenner did not smoke would not have changed the outcome at trial.

Jenner next argues that his trial counsel was ineffective for failing to impeach Fenstermaker with Fenstermaker's four prior felony convictions for burglary and receiving stolen goods.

Jenner's trial counsel explained that he did not use these convictions to impeach Fenstermaker because the jury was informed of the details of Fenstermaker's manslaughter conviction. Trial

counsel reasoned that the burglary and stolen goods convictions were less serious than the evidence that Fenstermaker stabbed someone to death for making an obscene gesture at him. This reasoning is objectively reasonable and counsel was not deficient. See English v. United States, 998 F.2d 609, 613 (8th Cir.) (ineffective assistance of counsel not demonstrated by attorney's failure to call a witness to impeach another witness), cert. denied, 114 S. Ct. 573 (1993).

Jenner further argues that his counsel was ineffective for not objecting to testimony that Jenner had been in prison. Jenner's counsel did not object to co-defendant Elliott's testimony that he only talked to Jenner "a couple times because [Jenner] was in the joint most of the time." Trial counsel explained that he did not object because he did not want to further emphasize Jenner's incarceration. Counsel's failure to object amounts to a reasonable trial strategy. See Whitmore, 8 F.3d at 624 (reasonable tactical decision not to object to evidence about a prior conviction).

Jenner also cites counsel's failure to propose an accomplice instruction as an example of ineffective assistance of counsel. He says his trial counsel should have proposed an instruction informing the jury that Fenstermaker was an accomplice to the Sjong murder and the jury should view Fenstermaker's testimony cautiously.

The South Dakota Supreme Court held that Jenner was not entitled to an accomplice instruction because Fenstermaker was not an accomplice under state law. Given the South Dakota Supreme Court's ruling, there is no basis for ruling that counsel was deficient for not proposing the instruction. See Berrisford, 826 F.2d at 752-53.

Jenner next contends that his trial counsel's failure to

withdraw his notice of alibi amounted to ineffective assistance of counsel.

Before trial, Jenner's counsel filed a notice of alibi defense, listing six witnesses, as required by S. D. Codified Laws Ann. § 23A-9-1 (1988). Jenner's attorney subpoenaed and called only one of these witnesses because he was unable to locate the other witnesses. During the prosecutor's cross-examination of Jenner, the prosecutor brought out Jenner's failure to call the alibi witnesses. Jenner now argues his trial counsel was ineffective for failing to object to this questioning and for failing to withdraw the notice.

The South Dakota Supreme Court found no error in trial counsel's failure to object because counsel never withdrew the notice, and, therefore, the prosecution's inquiry was proper under section 23A-9-6. The court further reasoned that even if counsel erred in failing to withdraw the notice, there was no prejudice, as the prosecution could still refer to the lack of alibi witnesses under South Dakota case law. We are satisfied that the prosecutor directed his comments at Jenner's failure to call alibi witnesses, which is not a basis for an ineffective assistance claim. See Epps v. Iowa, 901 F.2d 1481, 1483 (8th Cir. 1990).

Jenner also claims his counsel was ineffective for failing to object to the prosecution's questioning of Jenner and closing argument. During Jenner's cross-examination, the prosecutor asked Jenner whether other witnesses were lying. The South Dakota Supreme Court ruled that it was "probably improper" to ask whether other witnesses were lying, but it was not prejudicial. 521 N.W.2d at 432. After careful review of the questioning, we conclude that the references were isolated and directed to contradictions in witness' testimony. No prejudice occurred. See United States v. Williams, 897 F.2d 1430, 1432-33 (8th Cir. 1990).

Jenner also argues ineffective assistance based on his attorney's failure to object to an attack on counsel's integrity. The prosector stated in his closing argument:

> You see, they had this kind of a meeting. They had this idea. `Hey, we can both get out of this deal together if we stick together. We can both get out.' But you know what? You've heard it said before, there is no honor among thieves. There certainly isn't honor among murderers. When it came down to it, it was each man for himself. They pointed the finger at each other and the very least, ladies and gentlemen, you can't walk out of that jury room without at least finding one of them guilty, because the evidence is there.

Jenner's trial counsel had met with Elliott before Elliott testified at trial. At trial, Elliott changed his story, and Jenner's counsel impeached him.[3] Jenner contends that the prosecutor's statement directly attacked the truthfulness of his attorney, accusing him of concocting a story.

A fair interpretation of the prosecutor's argument, however, is that the prosecutor accused Jenner, not his attorney, of fabricating a defense. Thus, trial counsel's failure to object was neither deficient nor prejudicial. See United States v. Fuller, 887 F.2d 144, 147-48 (8th Cir. 1989), cert. denied, 496 U.S. 908 (1990).

---

[3]Jenner also argues that the trial court erred in admitting testimony of a witness that Elliott asked the witness to retrieve Elliott's gun from the trash and to get a shovel to bury the body. Jenner does not develop this argument in detail and fails to specify any constitutional violation or even trial error. See Jenner, 434 N.W. 2d at 82 (testimony admissible under co-conspirator exception to hearsay rule).

Jenner next claims his trial was fundamentally unfair because the trial court refused to sever his trial from that of co-defendant Elliott. Jenner claims his trial was fundamentally unfair because the jury could not compartmentalize the evidence as it related to the separate defendants and the separate counts. Jenner also claims that his defense was antagonistic and mutually exclusive to Elliott's, and Elliott's unexpected change of story at trial made it impossible for him to receive a fair trial.

"In challenging the trial court's failure to sever his trial from that of his codefendant, [Jenner] bears a heavy burden." Hollins v. Department of Corrections, 969 F.2d 606, 608 (8th Cir. 1992). This court will not grant habeas relief unless Jenner can establish that the failure to grant severance rendered his trial fundamentally unfair. Id.

In affirming Jenner's convictions, the South Dakota Supreme Court rejected Jenner's severance argument, finding that Jenner "failed to make the requisite showing that his defense and that of Elliott were so irreconcilable that severance was required." 434 N.W.2d at 81. The court reasoned that the conflict between the codefendants did not compel the jury to believe Elliott's story to the exclusion of Jenner's.

Following the South Dakota court decision, the Supreme Court explained that the joint trial of defendants with mutually antagonistic or irreconcilable defenses is not prejudicial per se, so as to require the trial court to sever the trial of codefendants. Zafiro v. United States, 506 U.S. 534, 538 (1993). Hostility or finger pointing among the defendants is not enough to require separate trials. See id. at 540. Severance is required only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. Jenner fails to articulate any trial right compromised by the joint trial or explain how the joint trial prevented the jury from making a reliable judgment. Id.

We are similarly unpersuaded that the number of charges and number of defendants mandated severing the trials. Jenner does not explain why the jury could not compartmentalize the evidence of the three charges against the two defendants. See United States v. Lucht, 18 F.3d 541, 553-54 (8th Cir. 1994), cert. denied, 115 S. Ct. 363 (1994); United States v. O'Connell, 841 F.2d 1408, 1431-33 (8th Cir. 1988), cert. denied, 488 U.S. 1011 (1989). Jenner has not shown fundamental unfairness.

## III.

Jenner next argues that there is insufficient evidence to support his convictions. We will grant relief for insufficient evidence only when the evidence at trial is such that no rational trier of fact could have found guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The evidence is considered in the light most favorable to the prosecution. Id.

Jenner argues that the photograph was the only physical evidence linking him to the Sjong murder, and absent his counsel's mistakes, the prosecution could not have used this evidence to gain a conviction. Besides Elliott's testimony identifying Jenner as the murderer, a significant amount of additional evidence pointed towards Jenner's guilt. There was evidence that Jenner was a member of the Vagos, and that the Vagos had a policy of killing "snitches." Indeed, Fenstermaker testified that he thought Sjong was killed because he was a snitch. Fenstermaker testified that following his arrest in California he telephoned Jenner, and Jenner told him not to "worry about it," he would "take care of it." Jenner told Fenstermaker not to call him or any other Vago until he

-10-

heard from somebody.  After Sjong's death, another witness testified that he overheard Jenner say that "the witness has been taken care of. . . ." Finally, there was evidence linking Jenner to the murder scene and one of the murder weapons.  Ample evidence existed for a rational trier of fact to have found guilt beyond a reasonable doubt.

**IV.**

Finally, Jenner contends that his due process rights were violated because of security measures taken at trial.

There is no record evidence, however, to tell us what security measures Jenner endured at his trial.  Jenner states that there were armed federal marshals in the courtroom and throughout the courthouse.[4]  He states that all spectators had to pass through a metal detector and spectators were not allowed to stay when the defendants entered or left the courthouse.  He states that certain floors of the courthouse were closed, and restrictions were placed on who he could speak with in the courthouse.

Jenner says that the security measures, especially when coupled with the other trial errors, gave the jury the impression that Jenner was extremely dangerous and guilty, and this violates his due process rights.

Even assuming we have an adequate record to review Jenner's claim, we cannot conclude the security measures identified by Jenner were so prejudicial that Jenner was denied a fair trial.  Holbrook v. Flynn, 475 U.S. 560, 568-70 (1986) (identifiable courtroom guards are not a per se constitutional violation); Hellum

---

[4]Jenner directs us to newspaper article written during his trial which described the courthouse as "a modern-day Alamo before the attack."

<u>v. Warden</u>, 28 F.3d 903, 907 (8th Cir. 1994) (additional security personnel and use of metal detectors are less prejudicial than physical restraints because of wider range of inferences that juror might reasonably draw from their use).

We affirm the district court's denial of the writ of habeas corpus.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.