PEOPLE v NICKSON

Docket No. 55698. Submitted May 18, 1982, at Detroit.—Decided September 13, 1982.

Randy C. Nickson was convicted by a jury in Wayne Circuit Court of manslaughter and possession of a firearm while in the commission of a felony and was sentenced, Charles Kaufman, J. Defendant appeals. *Held:*

1. Defendant was deprived of a fair trial by defense counsel's failure to discover and utilize the prior criminal records of two prosecution witnesses, records which might have been used for impeachment purposes. This error could well have made the difference between conviction and acquittal.

2. Defendant was not denied effective assistance of counsel because of defense counsel's decision not to request an instruction on additional lesser included offenses of second-degree murder.

3. The trial court adequately instructed the jury on defendant's theory of the case.

4. Appellate review of the trial court's jury instruction defining the concept of reasonable doubt is precluded since defense counsel did not object to the instruction and no manifest injustice is apparent.

5. Defendant's contention that he was denied a fair trial by remarks made during the prosecutor's closing argument is without merit.

6. The jury should have been instructed as to the offense of involuntary manslaughter as well as that of voluntary manslaughter.

Reversed and remanded for a new trial.

REFERENCES FOR POINTS IN HEADNOTES
[1-5] 21A Am Jur 2d, Criminal Law §§ 752, 753, 984 *et seq.*
Modern status of rule as to test in federal court of effective representation by counsel. 26 ALR Fed 218.
[2] Modern status of rules and standards in state courts, as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

1. CRIMINAL LAW — ATTORNEY AND CLIENT — EFFECTIVE ASSISTANCE OF COUNSEL.

A criminal defendant is provided with effective assistance of counsel when his attorney performs at least as well as a lawyer with ordinary training and skill in the criminal law and conscientiously protects the defendant's interests, undeflected by conflicting considerations.

2. APPEAL — CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

The test employed where a defendant alleges on appeal a specific mistake by counsel resulting in a denial of effective assistance of counsel is whether in a trial free of mistake the defendant would have had a reasonably likely chance of acquittal.

3. APPEAL — TRIAL STRATEGY — CRIMINAL LAW.

The Court of Appeals generally will not substitute its judgment for that of trial counsel in matters of trial strategy.

4. CRIMINAL LAW — TRIAL STRATEGY — EFFECTIVE ASSISTANCE OF COUNSEL.

A difference of trial tactics does not amount to ineffective assistance of counsel.

5. CRIMINAL LAW — TRIAL STRATEGY — ALL OR NOTHING DEFENSE.

The decision to proceed with an all or nothing defense is a legitimate trial strategy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud),* for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and N. J. KAUFMAN and R. A. BENSON,* JJ.

PER CURIAM. Defendant was charged with second-degree murder, MCL 750.317; MSA 28.549,

* Circuit judge, sitting on the Court of Appeals by assignment.

and possession of a firearm while in the commission of a felony, MCL 750.227b; MSA 28.424(2). A jury found him guilty of manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm while in the commission of a felony. Defendant was sentenced to prison terms of 10 to 15 years for manslaughter and 2 years for the firearm conviction. He appeals as of right.

The charges against defendant arose out of the October 24, 1979, shooting death of Willie Tigue in Ecorse. Sometime prior to the shooting, Tigue had apparently sold defendant a defective dictating machine that he had represented to be a telephone answering device. On the night in question, defendant, a paraplegic, called Tigue over to his specially equipped van to demand his money back. Tigue summoned two of his friends, Deshon Harris and Chester Bryant, who accompanied him into the van. During the course of the argument that followed, defendant drew a pistol from his waistband. Defendant and Tigue struggled over the weapon and five shots were fired, one fatally wounding Tigue. Defendant was wounded in the leg. Defendant testified that he pulled out the weapon because no one was listening to him and because he was afraid of the odds against him in the dispute. He stated that Tigue immediately placed his hand over the weapon and grabbed him by the neck. According to defendant, when the gun first discharged, he was struck in the leg. He denied intentionally shooting Tigue. Both Harris and Bryant testified that defendant drew the gun and pointed it at Tigue. Bryant indicated that the first shot was at Tigue and that it preceded the struggle over the weapon. Harris and Bryant each fled the van as the shooting began. Tigue also ran from the vehicle, but collapsed about 15 feet away. Although defendant drove away from the scene, he

promptly turned himself in to the police and was then taken to a hospital.

Defendant argues on appeal that he was denied effective assistance of counsel based upon trial counsel's failure to discover the prior felony convictions of prosecution witnesses Deshon Harris and Chester Bryant, convictions which might have been used for impeachment purposes. Evidence at a *Ginther*[1] hearing revealed that Harris was convicted in 1976 for attempted larceny from a building and that Bryant was convicted the same year for receiving and concealing stolen property over $100 and also in 1978 for possession of heroin. The information was obtained by appellate counsel by requesting LEIN Criminal Matter Histories from the state police. Apparently, defendant advised trial counsel prior to trial that he believed the witnesses had criminal records. Trial counsel neither requested such criminal histories nor made a pretrial motion for discovery of the witnesses' prior convictions. Instead, trial counsel relied upon the unverified representations of the Ecorse Police Department that Harris had no prior convictions and that Bryant's only prior conviction was for heroin possession. Bryant's conviction for possession of heroin was not utilized at trial for impeachment.

A criminal defendant is provided with effective assistance of counsel when his attorney performs at least as well as a lawyer with ordinary training and skill in the criminal law and conscientiously protects the defendant's interests, undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). Where a defendant alleges on appeal a specific mistake by counsel resulting in a denial of effective assistance

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

of counsel, the test employed is whether in a trial free of mistake the defendant would have had a reasonably likely chance of acquittal. *Garcia,* 266; *People v Degraffenreid,* 19 Mich App 702, 718; 173 NW2d 317 (1969). Here, we believe counsel's failure to discover and utilize the prior criminal records of witnesses Harris and Bryant was a serious mistake that deprived defendant of a fair trial.

Although we sympathize with trial counsel, who assumed that he could rely upon the initial representation of the police, a defendant is entitled to a more complete investigation into matters directly related to the credibility of prosecution witnesses. As appellate counsel's investigation has demonstrated, discovery of the prior convictions was not a difficult matter. Moreover, had at least a motion for discovery been made, the onus of verifying the witnesses' records might have been placed on the police.

During the *Ginther* hearing, trial counsel indicated that, had he been aware of the prior convictions, he might have declined to use them to impeach the witnesses. Generally, we will not substitute our judgment for that of trial counsel in matters of trial strategy. A difference of trial tactics does not amount to ineffective assistance of counsel. *E.g., People v Penn,* 70 Mich App 638, 648; 247 NW2d 575 (1976). Trial counsel noted that the jury was apprised of the fact that Harris and Bryant were close friends of the victim, Willie Tigue. Further, he believed, based on the witnesses' performances at the preliminary examination, that their credibility could sufficiently be called into question by cross-examination regarding inconsistencies between their trial and exam testimony. Finally, counsel felt that the witnesses would be tainted by the implication at trial that

the dictating machine sold to defendant by Tigue was stolen. Obviously, there are many methods to attack the credibility of a trial witness. However, the presence of additional methods would hardly make a decision to forego impeachment by evidence of a prior conviction a plausible trial strategy. Trial counsel did not reveal, nor can we conceive of, any strategic advantage that would be obtained by the defense by excluding the prior convictions of Harris and Bryant.[2]

Finally, we cannot agree with the trial court's conclusion that counsel's error was unimportant because the testimony of Harris and Bryant did not go to the very heart of the crime charged. The trial court reasoned that because the two fled defendant's van as the shooting began their testimony was not crucial. The trial record reveals that defendant testified that Tigue grabbed at the revolver before it was even fully drawn, and that the first gunshot struck the defendant in the leg. He stated that he did not intend to shoot Tigue, but that the gun was fired during their struggle over the weapon. Harris and Bryant each testified that defendant drew the weapon and pointed it at Tigue prior to any struggle. Bryant stated that defendant pointed the gun toward Tigue's face and fired the first shot. Harris also indicated that the shooting was preceded by defendant's threat to Tigue that he had "killed niggers before". The discrepancies between defendant's testimony and that of Harris and Bryant was critical in light of the offense that defendant was ultimately convicted of. Defendant was convicted of manslaughter pursuant to an instruction on the offense of

[2] Conceivably, the failure to attack the credibility of a witness could be sound trial strategy where it is perceived that the jurors empathize with the witness. Here, trial counsel's own evaluation of Harris and Bryant belies that possibility.

voluntary manslaughter, an instruction that re-
quired the jury to find that defendant intended to ·
kill Willie Tigue. See CJI 16:4:02. The allegations
that defendant threatened Tigue, pointed the gun
at him and fired prior to the struggle over the
weapon tended to prove defendant's intent. Admis-
sion of evidence of the prior convictions of Harris
and Bryant might have convinced jurors to disbe-
lieve those two witnesses on this crucial issue;
thus, counsel's error could well have made the
difference between conviction and acquittal. There-
fore, we conclude that under the standard of *Gar-
cia, supra,* defendant was denied effective assis-
tance of counsel, mandating retrial.

We have carefully examined defendant's remain-
ing appellate issues and find the majority of them
to be without merit. Defendant was not denied
effective assistance of counsel because of trial
counsel's decision not to request an instruction on
additional lesser included offenses. The decision to
proceed with an all or nothing defense is a legiti-
mate trial strategy. *People v Rone (On Second
Remand),* 109 Mich App 702; 311 NW2d 835 (1981);
*People v Rone (On Remand),* 101 Mich App 811;
300 NW2d 705 (1980). Presumably, upon retrial,
the defendant will participate with counsel in
choosing among possible lesser included offenses
on which instructions should be requested.[3]

The trial court adequately instructed the jury on
defendant's theory of the case by informing it that
it was defendant's contention that the decedent
was accidentally killed and that defendant had no
intention of killing him. In conjunction with the
court's instructions on the possible verdicts, the
burden of proof and reasonable doubt, the jury was

[3] 1 ABA Standards for Criminal Justice (2d ed), The Defense Func-
tion, Standard 4-5.2, Commentary.

apprised that if they accepted defendant's theory a verdict of not guilty would be in order. *Cf. People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975); *People v Stanley Jones,* 69 Mich App 459; 245 NW2d 91 (1976), *lv den* 401 Mich 831 (1977). Again, upon retrial, the defense may request a more explicit instruction on the defense theory.

The defense did not object to the trial court's instruction defining the concept of reasonable doubt, so appellate review is precluded absent manifest injustice. *People v Blondell Smith,* 108 Mich App 466; 310 NW2d 425 (1981). Here, the instruction, taken verbatim from CJI 3:1:04, did not result in manifest injustice. Contrary to defendant's contention, the instruction did not shift the burden of proof by requiring the jurors to "have a reason" to doubt defendant's guilt. Rather, the instruction informed the jury that a reasonable doubt was "an honest doubt based upon reason". Further, the instruction did not equate a reasonable doubt with the jurors' "ordinary affairs of life", *cf. People v Albers,* 137 Mich 678, 691; 100 NW 908 (1904), but instead compared it to "a state of mind which would cause [the jurors] to hesitate in making an important decision in" their own personal lives. Again, no manifest injustice is apparent.

We also find without merit defendant's claim that he was denied a fair trial by remarks made during the prosecutor's closing argument. The remarks were not so prejudicial that their impact could not have been eliminated by curative instruction. The defense's failure to object therefore precludes reversal in this instance. *People v Duncan,* 402 Mich 1, 15-17; 260 NW2d 58 (1977).

Finally, we agree with defendant's last claim, that the jury should have been instructed as to the

offense of involuntary manslaughter as well as that of voluntary manslaughter, since the former instruction more accurately comports with the defendant's theory of the case. See *e.g., People v Ora Jones, supra.*

Reversed and remanded for new trial.