*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD DONQUALL EDWARDS,

Defendant-Appellant.

UNPUBLISHED
June 20, 2019

No. 341974
Wayne Circuit Court
LC No. 17-004445-01-FC

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals his jury-trial convictions and sentences for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) and (e), and armed robbery, MCL 750.529. The jury acquitted defendant of two additional counts of CSC-I. The trial court sentenced defendant to 12 to 20 years' imprisonment for each conviction, to be served consecutively. We affirm.

## I. BASIC FACTS

Defendant's convictions arise from a February 2011 sexual assault of a female victim in Detroit. The victim testified that she was stranded in Detroit late at night and accepted an offer of a ride home from a male stranger. The stranger instead brought her to a vacant house in Detroit. After arriving at the house, the man pressed a hard, heavy object against the victim's neck, which she believed to be a gun. The man then led the victim to the second floor of the house, where he forced her to submit to acts of oral, anal, and vaginal penetration. Afterward, the man stole items from her purse and demanded her jewelry. The victim waited until the man was gone before she left the house and flagged down a police car. The police transported her to a hospital where a Sexual Assault Forensic Examiner (SAFE) conducted a rape-kit examination.

In 2015, the victim's rape kit was analyzed as part of a task force to resolve a backlog of untested rape kits in Detroit. DNA collected on the labial and vaginal swabs from the rape kit matched defendant's DNA profile. Although the victim was unable to identify defendant's photograph in a set of six photographs, defendant was still interviewed by a police detective. Defendant told the detective that the victim was a "crack whore" who engaged in consensual sex with him in exchange for heroin.

-1-

Defendant was charged with armed robbery and three counts of CSC-I based on the alleged oral, anal, and vaginal penetrations. After a jury trial, defendant was found guilty of CSC-I based on vaginal penetration and armed robbery, but the jury acquitted him of the other two CSC-I charges. At sentencing, the prosecution requested that the two convictions be imposed consecutively due to defendant's lack of remorse and his criminal history. The trial court agreed and sentenced defendant to consecutive terms of 12 to 20 years' imprisonment. On appeal, defendant argues that (1) the trial court erred when it imposed consecutive sentencing, (2) there was insufficient evidence that defendant possessed a dangerous weapon for purposes of the armed robbery conviction, and (3) that trial counsel was ineffective for failing to request an unarmed robbery instruction and for failing to impeach the victim on multiple prior inconsistent statements.

## II. CONSECUTIVE SENTENCES

Defendant first argues that the trial court abused its discretion by imposing consecutive sentences without justification. We disagree.

The trial court was authorized to impose discretionary consecutive sentences for defendant's CSC-I conviction and any offense arising from the same criminal transaction as the CSC-I offense. MCL 750.520b(3); *People v Bailey*, 310 Mich App 703, 723; 873 NW2d 855 (2015). Defendant does not dispute that his convictions of armed robbery and CSC-I arose from the same transaction. When a statute grants a trial court the discretion to impose consecutive sentences, the trial court must articulate its rationale for the imposition of each consecutive sentence so as to allow for appellate review. *People v Norfleet*, 317 Mich App 649, 665; 897 NW2d 195 (2016). We review the trial court's decision to impose consecutive sentences "for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *Id*. at 654.

Defendant argues that the trial court failed to sufficiently articulate particularized reasons for imposing consecutive sentences. He also complains that the court mischaracterized his comments about the victim and improperly considered his continued claim of innocence. He further argues that the consecutive sentences were not justified given his insubstantial criminal history.

Although a trial court cannot consider a defendant's refusal to admit guilt as an aggravating factor at sentencing, a defendant's lack of remorse is a permissible consideration if it is based on evidence other than the defendant's refusal to admit guilt. *People v Wesley*, 428 Mich 708, 714-719; 411 NW2d 159 (1987). In this case, the trial court's decision to impose consecutive sentences was based in part on the court's determination that defendant's "continued insistence on his innocence lacks understanding of the raw criminality of his conduct on the night in question." The court referred to defendant's police interview, in which he repeatedly referred to the victim as a "crack whore" and belittled her allegation of sexual assault by stating that there was "no need to rape" her because of her willingness to perform sexual acts in exchange for drugs or money, and even suggesting that "common sense" would indicate that a man would not want to sexually assault someone like the victim. Defendant's callousness toward his victim supports the trial court's finding that defendant "lacks understanding of the raw criminality of his conduct" toward the victim. The trial court also indicated that defendant's

version of events was not credible because he described an event that occurred in the fall, during daylight hours. However, the victim's report that she was sexually assaulted on the night of February 2, 2011, was corroborated by the date and time on the SAFE report. The trial court's justifications for finding a lack of remorse were based on considerations unrelated to defendant's claim of innocence, namely, his objectively false exculpatory explanation and his apparent expectation that the police and prosecutor should share his contempt for the victim.

In referencing defendant's criminal record at sentencing, the trial court accurately recognized that he has "only one prior felony conviction." However, the court found that it was more troubling that defendant had absconded from probation because "absconding from probation shows a fundamental lack for the legal system and it displays a lack of understanding of the need to pay the debt to society that arises from criminal conduct." The fact that the trial court's minimum sentence of 12 years is near the low end of defendant's sentencing guidelines range of 135 to 225 months' imprisonment, which adequately reflects defendant's criminal record, is an indication that the court did not place undue emphasis on defendant's criminal history. Regardless, the trial court was authorized to impose consecutive sentences, and defendant's criminal record was just one of several factors considered by the court in deciding to impose consecutive sentences. The court also considered defendant's conduct on the night in question, his "very disturbing" comments about the victim after he was arrested, and his "lack[] [of] understanding of the raw criminality of his conduct." The trial court stated that it was imposing consecutive sentences "for all of the[se] reasons."

In sum, the trial court adequately explained its reasons for imposing consecutive sentences and its decision to do so is not outside the range of reasonable and principled outcomes. Accordingly, the trial court did not abuse its discretion.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his conviction of armed robbery. We disagree.

"When reviewing a defendant's challenge to the sufficiency of the evidence," this Court reviews "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted). This Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 750.529 defines armed robbery as follows:

A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the

person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

MCL 750.530 states:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Thus, to obtain a conviction for armed robbery, a prosecutor must prove the following:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Gibbs,* 299 Mich App 473, 490-491; 830 NW2d 821 (2013) (quotation marks and citation omitted).]

The victim testified that the man who sexually assaulted her also robbed her. The DNA evidence was sufficient to establish defendant's identity as that person. The victim testified that the person who assaulted her placed a hard, heavy object against the back of her neck, causing her to believe she had no choice but to comply with his demand to enter the vacant house. This testimony was sufficient to satisfy the element that defendant "represent[ed] orally or otherwise that he or she was in possession of a dangerous weapon." *Id.* at 491. Defendant argues that the element of possessing a weapon or supposed weapon "in the course of committing a larceny" was not established because the victim did not testify that defendant was in possession of a weapon when he removed items from her purse and demanded her jewelry. " 'In the course of committing a larceny' is statutorily defined as including 'acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.' " *People v Chambers*, 277 Mich App 1, 7 n 5; 742 NW2d 610 (2007), quoting MCL 750.530(2). In this case, the victim described a continuous series of events that did not end until defendant departed from the vacant house. After escorting the victim to a vacant house on the pretext of borrowing his cousin's car, defendant placed an object that felt like a gun against the victim's neck. The victim testified that she felt that she had no choice but to comply with defendant's commands. Further, defendant removed items from the victim's purse and demanded her jewelry immediately after forcing her to perform sexual acts. The victim's testimony permitted the inference that the sexual assault and robbery were part of an unbroken chain of events during

which defendant used an article fashioned in a manner to lead the victim to reasonably believe that it was a dangerous weapon that he would use if she resisted either the sexual assault or the larceny. Accordingly, the evidence was sufficient to support defendant's conviction of armed robbery.

## IV. INEFFECTIVE ASSISTANCE – JURY INSTRUCTION

Defendant argues that defense counsel was ineffective for failing to request a jury instruction on the lesser-included offense of unarmed robbery. We disagree.

Because defendant did not raise this ineffective-assistance claim in a motion for a new trial or request for a *Ginther*[1] hearing, our review is limited to errors apparent from the record. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (citation omitted). "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *Id.*, quoting *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

Trial counsel is afforded broad discretion in matters of trial strategy. *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). "Failing to request a particular jury instruction can be a matter of trial strategy." *Id*. This Court generally will not substitute its judgment for that of counsel regarding matters of trial strategy, nor assess counsel's competence with the benefit of hindsight. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

Defendant argues that trial counsel should have requested an instruction on unarmed robbery because the victim did not testify that he had a gun or that he appeared to have a gun contemporaneously with his commission of the larceny. As explained earlier, however, the victim's testimony indicated that the larceny was committed during the course of an unbroken chain of events during which defendant used an article fashioned in a manner to lead the victim to reasonably believe it was a dangerous weapon that he would use if she resisted either the sexual assault or the larceny. More significantly, defendant claimed that he engaged in consensual sex with the victim in exchange for drugs, under circumstances that did not involve any robbery, armed or unarmed. A decision to forgo an instruction on a lesser offense and instead "force the jury into an 'all or nothing' decision" is a legitimate trial strategy and does not constitute ineffective assistance. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982); see also *People v Rone (On Second Remand)*, 109 Mich App 702, 718; 311 NW2d 835 (1981). Given that defendant's theory of the case was that he and the victim engaged in a consensual sexual encounter that did not involve any robbery, it was reasonable for counsel to forgo requesting an instruction on unarmed robbery. Requesting such an instruction might have reduced the likelihood of an acquittal. *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(1986). Although counsel's strategy failed to gain an acquittal for defendant, "[a] failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Accordingly, defendant fails to establish that counsel's failure to request an instruction on unarmed robbery was an objectively unreasonable error.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises an additional claim of ineffective assistance of counsel in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. He argues that counsel was ineffective for failing to more vigorously impeach the victim with inconsistencies between her trial testimony and various statements reported in prior police and medical reports, and in her prior preliminary examination testimony.

Decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). The record reveals that the victim gave statements regarding the sexual assault to two different police officers, a hospital emergency room physician, a hospital resident, and the SAFE nurse. Although there were inconsistencies regarding the order in which the different sexual penetrations occurred, and with some of the details associated with each penetration, as well as regarding whether the victim actually saw a gun or was struck in the head, all of the victim's accounts were consistent in describing that defendant took her to an upstairs room, where he forced her to submit to acts of oral, anal, and vaginal penetration. The variances in the order of which the penetrations occurred, and with details such as whether the victim was kneeling or standing during anal penetration, or how her pants came off, did not significantly detract from the victim's consistent reports of three acts of sexual penetration after defendant threatened her with an object that she believed to be a gun. Defense counsel explored some of the inconsistencies in his cross-examination, but more rigorous examination also risked highlighting the consistent aspects of the victim's different accounts, principally, three acts of penetration in an upstairs room after defendant threatened the victim with an apparent gun. Moreover, in light of the DNA evidence and defendant's claim of consensual sexual activity, it was not unreasonable for defense counsel to refrain from focusing on alleged inconsistencies relating to the sexual activity and instead focus on questioning the victim about her drug use and her reasons for visiting her former drug house in order to insinuate that her overall story was not credible because she may have prostituted herself in exchange for drugs.

Defendant argues that the victim's prior statements established an inconsistency with regard to whether there was an actual or only attempted act of anal penetration. Although there were differences in the victim's descriptions of the act of anal penetration, all of the descriptions referred to activity sufficient to satisfy the statutory definition of "sexual penetration," which is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, *however slight*, of any part of a person's body or of any object into the genital or anal openings of another person's body, but semen is not required." MCL 750.520a(r) (emphasis added). Further, the jury acquitted defendant of the anal penetration charge, so defendant has not demonstrated that he was prejudiced by counsel's failure to further impeach the victim regarding that count.

Defendant's reliance on *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012), is misplaced. Unlike in that case, in which the defendant's attorney essentially exercised no strategy at all, the record in this case reveals a reasonable strategy to defense counsel's cross-examination and impeachment of the victim.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello