*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK DAVID WEISBERG,

Defendant-Appellant.

UNPUBLISHED
March 30, 2023

No. 358843
Oakland Circuit Court
LC No. 2012-239992-FH

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant challenges his October 5, 2012 jury trial conviction of embezzlement of $50,000 or more but less than $100,000, MCL 750.174(6). Defendant was sentenced to five years' probation, with the first year to be served in jail. Defendant was ordered to pay restitution in the amount of $75,000. On May 19, 2021, the parties stipulated and the trial court ordered defendant's appellate rights be restored. Thereafter, defendant filed for leave with this Court which was granted.[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant, who has worked as an accountant since 1985, was hired by Alex Michael Sova in 2001, to work as a "controller" for Sova's companies. The companies included: (1) Sova Steel, (2) Sova Group, (3) Sova Steel West, (4) Sova Equipment, (5) Minority Industrial Supply ("Minority"), and (6) Nationwide Envelope Specialists ("Nationwide"). According to Sova, defendant was responsible for: (1) payroll; (2) balancing the companies' books; (3) depositing checks; (4) paying vendors; and (5) paying the companies' bills, union benefits, and taxes. Except for Sova Equipment, defendant had authority to write checks from all of Sova's companies. Defendant also had access to the companies' line of credit. Sova did not review the companies' bank statements because he "relied on" defendant. However, defendant would provide Sova with

---

[1] *People v Weisberg*, unpublished order of the Court of Appeals, entered March 10, 2022 (Docket No. 358843).

a breakdown of expenses and "cash flow" on a regular basis. Defendant's salary was "[r]oughly" $75,000, and he had a small expense account.

In March 2010, Sova discovered multiple checks had been written from his companies' checking accounts to GEF Representatives & Consultants, LLC ("GEF"), which is a company that was formed by defendant in 2008. Sova was unaware of GEF's existence until March 2010, and had not given defendant permission to transfer funds from his companies to GEF. As of March 10, 2010, the total amount that was transferred to GEF from Sova's companies was $574,433.53. Additionally, $131,008.78 had been transferred from Sova's companies to defendant's Merrill Lynch account. When confronted, defendant quit his job and refused to explain the financial transactions. It was later discovered by Sova that defendant failed to pay certain company bills, and defendant had been reimbursed for $35,135.45 in expenses in 2008, and $4,500 in expenses in 2009. Sova Steel declared bankruptcy. Minority, Sova Steel West, and Sova Equipment ceased operations.

Sova filed suit against defendant. During discovery, defendant denied he embezzled from Sova's companies. Defendant asserted he or GEF made a series of short-term loans to Sova's companies when Sova or Sova's companies were short on funds. Defendant would reimburse himself and GEF when there were sufficient funds available, which explained the money transfers. Sharon McCosky, a bookkeeper for Nationwide, examined the relevant records and estimated GEF reimbursed Sova's companies in the amount of $472,444.09, and defendant paid the companies' vendors $123,101.81 from his Merrill Lynch account.

Defendant was charged with one count of embezzlement of $100,000 or more, MCL 750.174(7) (Count I); embezzlement of $20,000 or more but less than $50,000, MCL 750.174(5)(a) (Count II); and embezzlement of $1,000 or more but less than $20,000, MCL 750.174(4)(a) (Count III). The matter proceeded to trial, where the prosecutor admitted 46 exhibits, which totaled more than 1,200 pages, detailing the individual transactions underlying the embezzlement charges. Sova and McCosky testified about the financial documents.

Defendant testified on his own behalf, explaining with respect to Count I that his actions were legal because he was reimbursing himself or GEF for short-term loans made to Sova's companies, which were suffering financially and often unable to make payroll and pay vendors. Defendant disputed the accuracy of many of the financial documents admitted into evidence by the prosecutor. According to defendant, GEF was still owed $14,410.02 from Sova and Sova's companies. Defendant also explained with respect to Counts II and III that he was entitled to reimbursement in 2008, and 2009.

At the close of proofs, the trial court instructed the members of the jury on the elements of embezzlement and explained they could acquit defendant if they found he had a claim of right to the funds. The trial court, noting the verdict form, stated: "[U]nder count one, you'll have three choices. Only one is to be marked." The jury verdict form stated for Count I, the jury could find defendant (1) guilty as charged of embezzlement of $100,000 or more, (2) guilty of the lesser included offense of embezzlement of $50,000 or more but less than $100,000, or (3) not guilty. On Count I, the jury found defendant guilty of the lesser included offense. The jury found defendant not guilty on Counts II and III. The trial court sentenced defendant to five years'

probation, with the first year to be served in jail. Defendant was ordered to pay $75,000 in restitution.

Defendant requested appellate counsel. Defendant was appointed appellate counsel, who moved for relief from judgment under MCR 6.500 *et seq*. The motion was denied, and defendant's attempt to file an application for leave to appeal from that decision was unsuccessful. *People v Weisberg*, unpublished order of the Court of Appeals, entered May 22, 2015 (Docket No. 326927). Defendant again unsuccessfully moved for relief from judgment in January 2020. In May 2021, the trial court granted defendant's motion for reinstatement of his appellate rights. Defendant filed a delayed application for leave to appeal and moved this Court to remand for a *Ginther*[2] hearing. This Court granted leave, but denied defendant's motion to remand for a *Ginther* hearing "without prejudice to defendant refiling the motion after this case is assigned to a case call panel." *People v Weisberg*, unpublished order of the Court of Appeals, entered March 10, 2022 (Docket No. 358843).

## II. ANALYSIS

On appeal, defendant first argues he was denied effective assistance of counsel because trial counsel failed to object to the jury considering whether to convict him of the lesser included offense of embezzlement of $50,000 or more but less than $100,000. According to defendant, he would have been acquitted but for trial counsel's error.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). In the absence of an evidentiary hearing, this Court's review of ineffective assistance claims is generally limited to mistakes apparent from the existing record. *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018).

The Sixth Amendment of the United States Constitution guarantees criminal defendants receive effective assistance of counsel. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

> In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [*People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citations omitted).]

Under the objective-reasonableness prong, "[t]here is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

were sound trial strategy." *Id*. at 236-237 (quotation marks and citations omitted; alteration in original). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id*. at 237 (quotation marks and citations omitted; alteration in original). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. (quotation marks and citation omitted).

Defendant argues trial counsel was unaware that the jury was given the option of convicting him of the lesser included offense of embezzlement of $50,000 or more but less than $100,000 for Count I. Our review of the record leads us to conclude otherwise. On the second day of trial, the trial court, the prosecutor, and trial counsel discussed the verdict form. The trial court stated: "We have lessers on count one and straight up ones on counts two and three." Trial counsel did not object. During the prosecutor's closing argument, he explained to the jury why it was going to be instructed on embezzlement of $50,000 or more but less than $100,000, the lesser included offense for Count I:

> The reason that's in there is you may not agree with my math. All right. We're just over a hundred thousand dollars, that's the threshold. Gave the benefit of the doubt to the defendant on that. You may not agree with the math. And it's up to you as the fact finders to go through and determine that.

The trial court made it clear the verdict form gave the jury the option of convicting defendant of the lesser included offense on Count I. Trial counsel did not object, and did not express surprise or raise any objections on the record after the jury found defendant guilty of the lesser included offense on Count I. Thus, contrary to defendant's assertions, the record supports trial counsel knew the jury could consider whether defendant was guilty of a lesser included offense. The question then becomes whether trial counsel should have objected.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Deciding what instructions to request falls within the wide range of discretion accorded to counsel and a defendant must overcome the presumption that counsel's actions were reasonable strategy. *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). We have recognized that an all-or-nothing defense is a legitimate trial strategy. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). When the defense trial strategy is to obtain an outright acquittal, an instruction or argument on a lesser offense may reduce the defendant's chances of acquittal. *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986). This may be a reasonable strategy where "[d]efense counsel may have correctly assumed that the minimum sentence for the offense charged, if defendant should be convicted of it, would be no more than the probable minimum sentence for a conviction of a lesser included offense." *Id*. "The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012).

The maximum penalty for embezzlement of $100,000 or more is 20 years' imprisonment, while the maximum penalty for the lesser included offense is 15 years' imprisonment. MCL 750.174(6) and (7).

-4-

The primary theory of defense was defendant's actions were legal because he was reimbursing himself and GEF for expenses he or GEF incurred on behalf of Sova and Sova's companies. However, it was also sound strategy to have a backup plan in case the jury found defendant embezzled the money. This alternative plan was to rely on the jury finding the prosecution had failed to prove beyond a reasonable doubt that the amount embezzled for Count I was $100,000 or more. Trial counsel's questioning of the accounting and the accuracy of the list of transactions supporting the embezzlement charges supported this secondary theory. Also, in the event the jury disagreed on Count I, the lesser included offense gave the jury the option of reaching a compromise verdict rather than continuing to deliberate and ultimately convicting defendant of embezzlement of $100,000 or more. Trial counsel had legitimate strategic reasons for not objecting. "[C]ourts will not second-guess matters of trial strategy," *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003), and we will not assess counsel's competence with the benefit of hindsight, *Dunigan*, 299 Mich App at 590.

On appeal, defendant argues trial counsel was unaware the jury was permitted to convict defendant on the lesser included offense. To support this, defendant submits a document, which he purports to be an affidavit signed by trial counsel. Even putting aside the fact that the document is not part of the lower court record, see MCR 7.210(A)(1), the "affidavit" defendant provides was not verified by oath or affirmation before a person authorized to issue an oath or affirmation. The "affidavit" also contains an electronic signature, as opposed to an actual signature. Thus, it is not a proper affidavit. See MCR 1.109(D)(1)(f).

Even if we were to consider the document, it does not establish defendant is entitled to the relief he seeks. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002); see also *People v Mendoza*, 468 Mich 527, 545; 664 NW2d 685 (2003) ("An inferior-offense instruction is appropriate only when a rational view of the evidence supports a conviction for the lesser offense."). "In general, the duty of the trial court to instruct with regard to lesser included offenses is determined by the evidence." *People v Torres (On Remand)*, 222 Mich App 411, 416; 564 NW2d 149 (1997). "The prosecutor, as well as the defendant, may request an instruction regarding a lesser included offense." *Id*.

Defendant argues on appeal a rational view of the evidence did not support the jury considering the lesser included offense. During trial, the prosecutor presented a myriad of exhibits in the form of bank statements, deposit slips, checks, and financial statements regarding the various transactions in 2009, and 2010. Sova and McCosky also testified. The prosecutor argued evidence supported defendant transferred money from Sova's companies to GEF and defendant's Merrill Lynch account, which added up to a net amount of $109,896.41 for Count I.

However, in his closing arguments, the prosecutor acknowledged the jury could disagree with his "math." Indeed, McCosky provided most of the testimony concerning defendant's embezzlement. McCosky acknowledged she was not a forensic accountant or a certified public accountant. Since 2010, McCosky made three different estimations concerning the amount defendant repaid to Sova's companies. During direct examination, defendant, who has been an accountant since 1985, provided extensive testimony concerning his issues with McCosky's calculations. It is important to keep in mind that the prosecutor argued defendant embezzled

$109,896.41 for purposes of Count I. This margin of $9,896.41 over the threshold amount necessary to convict, combined with the multitude of exhibits and somewhat confusing testimony over three days, supports instructing the jury on the lesser included offense. Importantly, "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial." *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008) (quotation marks and citation omitted). The jury was so instructed. Because any objection on the part of trial counsel would have been futile, defendant is not entitled to relief on his ineffective assistance of counsel claim. See *id*. at 257. We also decline to remand the matter for a *Ginther* hearing because defendant has not set forth any additional facts that would require development of a record to determine if trial counsel was ineffective. See MCR 7.211(C)(1)(a)(*ii*).

Defendant argues the trial court plainly erred because the totality of the circumstances demonstrate the trial court's questioning of defendant and comments toward trial counsel improperly influenced the jury to convict defendant.

To preserve a claim of judicial bias or misconduct, the claim must be raised in the trial court. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant did not raise a claim of judicial bias or misconduct. Therefore, this issue is unpreserved, see *id*., and we review for plain error affecting substantial rights, *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018), amended by *People v Brown*, unpublished order of the Court of Appeals, entered June 18, 2019 (Docket No. 339318).

"A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App at 598 (quotation marks and citation omitted). In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry, and we consider the "cumulative effect" of any errors. *Id*. at 171-172. When evaluating the totality of the circumstances,

> the reviewing court should inquire into a variety of factors including, but not limited to, [(1)] the nature of the trial judge's conduct, [(2)] the tone and demeanor of the judge, [(3)] the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, [(4)] the extent to which the judge's conduct was directed at one side more than the other, and [(5)] the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*. at 164.]

"Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Stevens*, 498 Mich at 172-173.

With respect to the nature of the conduct, defendant argues the trial court's questioning of him on three separate instances was plainly erroneous because it suggested the trial court did not believe his testimony. In general "[t]he court may interrogate witnesses, whether called by itself or by a party," MRE 614(b), and is given broad discretion in doing so, *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). Our Supreme Court has held that "it is appropriate for a judge to ask questions of a witness that are designed to make clearer otherwise unclear, vague, or confusing testimony." *People v Swilley*, 504 Mich 350, 373; 934 NW2d 771 (2019). Additionally, this Court has held that a trial judge's questioning of a witness was proper because its questions were meant to "clarify testimony or elicit additional relevant information." *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013) (quotation marks and citation omitted).

However, a "judge's responsibilities do not include emphasizing or exposing potential weaknesses in a witness's testimony or conveying the judge's personal view on whether a witness should be believed." *Swilley*, 504 Mich at 373. "Questions from a judge that are designed to emphasize or expose incredible, unsubstantiated, or contradictory aspects of a witness's testimony are impermissible." *Id*. at 374. "[I]t is not the role of the court to impeach a witness or undermine a witness's general credibility." *Id*. at 373. "Credibility is properly tested in the crucible of cross-examination, not by judicial inquisition." *Id*. at 376.

When examining whether judicial questioning was improper, it is important that a reviewing Court keep the questioning and its related issues in their proper context. To that end, defendant's first objection to judicial questioning centered around the trial court inquiring of defendant whether defendant thought he was entitled to the money.

The context in which those questions were posed begins by revealing that the jury was informed by the trial court there would be two days of proofs, and trial would not extend past October 5, 2012. Specifically, the trial court stated:

> We should have the proofs to you within two days, today and tomorrow. Your deliberations could take some more time after that, but our job will be done basically once we get the evidence to you and the closing arguments are done and I've instructed you on the law. We expect that to occur sometime tomorrow, is that correct, [defense counsel]?

However, as often happens, the case was taking longer than initially thought. The jury would ultimately hear testimony over three days on Monday, October 1, 2012; Tuesday, October 2, 2012; and Thursday, October 4, 2012. Due to the trial lasting longer than they were told it would, jurors complained because it appeared as though the trial court had misled them as to the actual length of trial. Based on those complaints, the trial court expressed its concerns to the attorneys about the amount of time the trial was taking. For example, during direct examination of defendant on October 2, 2012, defendant testified he believed the money he transferred from Sova's companies rightfully belonged to him. Defendant's testimony was extensive, and trial counsel sometimes, (perhaps best described as often), asked leading questions. After the jury was dismissed at 4:19 p.m., on October 2, 2012, defendant's direct examination was still not complete. The trial court instructed the members of the jury to return on Thursday, October 4, 2012, noting the case was "pretty document intensive." Thereafter, the prosecutor, trial counsel, and the trial court then discussed whether a claim of right would be an appropriate jury instruction.

On the morning of October 4, 2012, the trial court stated:

Counsel, we have a problem with the jury and we need to move this along and no matter what I may declare a mistrial tomorrow because I just feel pressed to do it with the jurors (indiscernible) of their problems and my indicating to them [their service would be complete] by Friday.

So if they're deliberating and haven't got through it by tomorrow night it might be a mistrial. I'm putting you on notice. So we need to move these questions along, okay?

The trial court then continued a discussion with the parties as to whether a claim of right instruction would be proper.

The jury entered the court room, and defendant's direct examination continued. Early in trial counsel's questioning, he asked defendant what authority he had to advance money to Sova's companies. Defendant responded: "[B]asically . . . part of my job responsibility was to make sure the payroll was funded." The following line of questioning then occurred between the trial court and defendant:

> *THE COURT*: Kind of on that point about it. So you would take money, your testimony was from the other day, that was coming in as what debts that were owed to the company? What were they? I mean how—the money came in. Checks, some of which [the prosecutor] has demonstrated here, right?
>
> *THE WITNESS*: That are owed to the company?
>
> *THE COURT*: Yes.
>
> *THE WITNESS*: You mean from customers that we had billed?
>
> *THE COURT*: Customers.
>
> *THE WITNESS*: Okay.
>
> *THE COURT*: Is that what—is that correct?
>
> *THE WITNESS*: There would be—
>
> *THE COURT*: And you've acknowledged that in some of these checks, right?
>
> *THE WITNESS*: Not in these checks, no, your Honor.
>
> *THE COURT*: Okay. The money that you put into your company, okay?
>
> *THE WITNESS*: Okay.
>
> *THE COURT*: That came from Sova.

-8-

*THE WITNESS*:  Okay.

*THE COURT*:  Did you think that money was yours?

*THE WITNESS*:  Yes.

*THE COURT*:  You did?  You thought it was yours.

*THE WITNESS*:  Yes, sir.

*THE COURT*:  Okay.  Continue.

While defendant argues the trial court's questions "intimated [the trial court's] skepticism" of defendant's testimony, we conclude the trial court was seeking to clarify defendant's testimony, which is permissible.  See *McDonald*, 303 Mich App at 437.  The questioning occurred at the beginning of defendant's second day of direct examination, after the trial court expressed the need to move the matter forward and after the parties discussed whether a claim of right instruction would be proper.  The trial court's questioning went directly to the issue of whether a claim of right instruction was proper.  Importantly, the trial court read the instruction at the close of proofs despite its previous inclination not to read it and the prosecutor's objections.  Thus, the questioning ultimately benefited defendant.  Additionally, given the complexity and length of defendant's testimony on October 2, 2012, it cannot be said judicial intervention was inappropriate.  Unlike the testimony described in *Swilley*, defendant's testimony was not "clear, simple, and straightforward, providing a consistent time line of events. . . ." *Swilley*, 504 Mich at 374 (finding that judicial intervention was not necessary given that the witness's testimony "was clear, simple, and straightforward, providing a consistent time line of events during the afternoon in question").  Rather, defendant's testimony was disjointed, difficult to follow, and complex as it involved a series of transactions there comprised a myriad of dates, monetary amounts and business entities.  Our review of the record leads us to conclude that the trial court's questioning was an attempt to reveal the relevant portions of defendant's testimony as to the issue of whether a claim of right was proper.  Accordingly, this judicial questioning did not amount to improper judicial intervention.

Next, defendant takes issue with the judicial question which arose during his direct examination where defendant testified he was responsible for the line of credit relating to Sova's companies.  The trial court then asked defendant what a line of credit was and whether there was a maximum amount on the lines of credit.  After defendant answered, the following relevant exchange also occurred:

> *THE WITNESS*:  I was given the authority to prepare the document that allowed us to borrow against [the line of credit] and to make the phone call to the bank to advance the funds into our accounts and also for me to call the bank and have the bank repay those balances also.

> *  *  *

> *THE COURT*:  And where did that authority come from?

*THE WITNESS*: Actually, the authority came from Mr. Sova who signed documents allowing me the authority to sign or advance and repay on the line of credit.

*THE COURT*: Meaning there were—there was paperwork documenting that?

*THE WITNESS*: Yes, there were resolutions and—

*THE COURT*: Continue. They have not been admitted, right?

[*THE PROSECUTOR*:] No and they've never been provided either, your Honor.

*THE COURT*: Okay. Next question?

Defendant argues, by interrupting the direct examination and emphasizing defendant's testimony was not corroborated by trial exhibits, the trial court again suggested "disbelief" in defendant's testimony. However, we conclude the trial court's questions were meant to "clarify testimony or elicit additional relevant information." See *McDonald*, 303 Mich App at 437 (quotation marks and citation omitted). Indeed, the trial court interjected to ask defendant to explain to the jury what a line of credit is, whether the lines of credit had a maximum amount, and what authority defendant had to access the line of credit. These were relevant questions. Additionally, because of the complexity and length of defendant's testimony on October 2, 2012, it cannot be said judicial intervention was inappropriate. Indeed, as previously stated, defendant's October 2, 2012 testimony was not "clear, simple, and straightforward, providing a consistent time line of events. . . ." *Swilley*, 504 Mich at 374. While defendant testified he paid bills on behalf of Sova and Sova's companies with his personal funds, it was not made clear defendant had authority from Sova to do so. Rather, defendant testified Sova did not question where money was coming from, even though Sova was aware the companies were struggling financially.

From this line of questioning we cannot glean evidence that the questions conveyed the trial court's personal view on whether defendant should be believed. See *Swilley*, 504 Mich at 373 (holding "a judge should not exhibit disbelief of a witness intentionally or unintentionally or permit his own views on disputed issues of fact to become apparent to the jury") (quotation marks and citation omitted). Rather, it appears the trial court was attempting to elicit relevant information, clarify defendant's testimony, and determine whether certain exhibits were in evidence. This was not unreasonable. The prosecutor successfully moved to admit 46 exhibits into evidence, which totaled more than 1,200 pages. The exhibits consisted mostly of lengthy financial documents. The trial court's questions were not "designed to emphasize or expose incredible, unsubstantiated, or contradictory aspects of" defendant's testimony, see *id*. at 374, and did not amount to improper judicial intervention.

Additionally, following recross-examination of defendant, trial counsel expressed an intent to ask defendant more questions. The trial court stated:

*THE COURT*: Sir, well wait now we do direct, cross, direct, cross. I don't know if you were thinking of asking more questions or not.

*DEFENSE COUNSEL*:  I was—

*THE COURT*:  This has gone on long enough.

*DEFENSE COUNSEL*:  I understand, Judge.  I'd just like him to clarify those answers that [the prosecutor] just asked.

*THE COURT*:  No.  We've done direct, cross, direct, cross.  Do you get a redirect.  I'm sorry, you're right.  On redirect you get to do the redirect.  Let me ask you—hold on just a minute.  Hold on, he's your witness though.  Hold on.

The trial court then questioned defendant.  The relevant exchange is as follows:

*THE COURT*:  Sir, there were checks from Sova that you deposited in GEF, is that correct?

*THE WITNESS*:  From Sova entities to GEF.

*THE COURT*:  Okay.  Did they legally belong to you?

*THE WITNESS*:  I believe so.

*THE COURT*:  Why do you say you believe so?

*THE WITNESS*:  Because I advanced those funds in order—

*THE COURT*:  Well no, no but I mean who were the checks made to?  This kind of a legal question.  So the checks were made to who?

*THE WITNESS*:  Well there were two sets of checks.  Some checks were made payable to GEF.

*THE COURT*:  Okay.

*THE WITNESS*:  Some were made payable to Mark Weisberg.

*THE COURT*:  Okay.  Were any ever made payable to you?

*THE WITNESS*:  Yes.

*THE COURT*:  Okay.  Of the ones he's—that [the prosecutor]'s outlined here.

*THE WITNESS*:  Yes.

*THE COURT*:  Okay.  And you're saying they legally belonged to you.

*THE WITNESS*:  Correct.

> *THE COURT*: Okay. We'll attend to that later so. We've done direct and cross and direct and cross, right? Okay, we're done. You may step down, sir.

From this exchange it does not appear that the trial court was attempting to disparage or contradict defendant's prior testimony. Rather, the questioning seemingly had a singular purpose of the trial court attempting to control the proceeding by clarifying prior testimony; the very reason cited by defendant's counsel for wanting to further engage defendant while he was in the witness stand. Because the trial court's questioning of defendant was its attempt to move the proceedings along, its questioning of defendant was therefore within the parameters of its discretion. MCL 768.29; *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006) ("Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct.") (quotation marks and citation omitted).

Following our review of the record, we conclude that the trial court's examination of defendant was not error because the questions posed did not give the appearance of partiality, and the questioning served to clarify the record evidence rather than add to, or distort the evidence. See *People v Davis*, 216 Mich App 47, 50-52; 549 NW2d 1 (1996). Such a conclusion is not without some semblance of doubt. There were times when it appeared the trial court seemed to be challenging defendant's testimony. However, examination of the questioning in context reveals no indication the trial court sought to impeach defendant or undermine his general credibility. Rather, the trial court asked the questions in order to elicit additional relevant information and to clarify defendant's prior testimony. See *Stevens*, 498 Mich at 173 ("[I]t is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information."); *Swilley*, 504 Mich at 373 (noting that a judge's authority "encompasses a right to question a witness for the purpose of shedding light on something unclear in the testimony") (quotation marks and citation omitted). Because the now challenged questioning on the part of the trial court was proper, this factor weighs against the presence of bias.

The second *Stevens* factor considers the tone and demeanor displayed by the trial court in the presence of the jury. *Stevens*, 498 Mich at 164. Although appellate courts cannot read tone from the record, certain words may be considered hostile or biased by their very nature, when considered in the context in which they are used. *Id*. at 174-176. Furthermore, trial judges should avoid being argumentative, skeptical, intimidating, or otherwise hostile. *Id*. at 175.

As far as can be construed from the transcripts, the trial court did not speak to defendant or trial counsel with a tone that would suggest hostility. Certainly there were no objections made as to any such behaviors. And, even if we were to conclude that the trial court's questioning at certain points could be read to exhibit some signs of skepticism, the now-challenged exchanges are distinguishable from other cases where the tone and demeanor of the trial judge's questions were found to show bias. In *People v Cole*, 349 Mich 175, 197-198; 84 NW2d 711 (1957), the trial judge made comments to the principal defense witness such as: "[T]here is nothing before you, [y]ou just be quiet," and "[n]ow witness, that is not the question, is it?" Such statements, on their face, show hostility and belittling of the witness. The comments made here by the trial court do not show an obviously sarcastic tone and are more aptly interpreted as being said in a frank, genuinely inquisitive manner. This case can also be distinguished from *Stevens*, 498 Mich at 186-187, where the trial judge asked plainly sarcastic questions and used words such as "allegedly" to describe the witness's testimony; no such questions were present in the trial court's exchange with

defendant. Unlike the trial judge in *Swilley*, the trial judge herein did not "pepper[]" defendant with questions in a "combative manner" without even giving him a chance to respond. *Swilley*, 504 Mich at 384. Furthermore, at no point did defendant complain about the questions being posed by the trial court. Cf. *id*. (noting that, during the trial court's questioning, the witness hesitated and stated "[w]ait a minute, you [are] trying to confuse me"). While defendant is correct the trial court stated it knew of "no law" that would permit an employee to act as defendant acted, this comment was made outside the presence of the jury when the parties were discussing the claim of right instruction. Considering the lack of evidence of an improper tone or demeanor, this factor weighs against the presence of bias.[3]

The third *Stevens* factor considers the scope of judicial conduct given the length or complexity of the trial and the extent to which the trial judge's interventions were directed at one side more than the other. *Stevens*, 498 Mich at 164. Questioning of a witness may be deemed inappropriate when it is excessively long, in light of the complexity of the trial. *Cole*, 349 Mich at 188. In *Cole*, the trial judge questioned the defendant and a defense witness for a total of 16 pages of the transcript, in a 15-day trial. *Id*. The trial judge subjected the witness to a series of heated questions and frequently interrupted the witness. *Id*. at 188-194. The trial judge did not question the prosecution's witnesses with similar vigor. *Id*. at 194-195. Consequently, our Supreme Court held the length of the questioning, as well as the tone and the unequal rigor of questioning between the defense and prosecution's witnesses, demonstrated partiality; the Court reasoned that all of these errors taken together created an atmosphere of partiality toward the prosecution. *Id*. at 200. Similarly, in *Simpson v Burton*, 328 Mich 557, 563-564; 44 NW2d 178 (1950), our Supreme Court held because the questions asked of the defendant were "very many in number," they may have unjustifiably made the jury suspicious of the defendant, and thus were partial to the plaintiff.

Here, testimony occurred over three days. The subject matter to which defendant was testifying was complex and confusing because of the amount of and nature of the financial transactions. Moreover, to the extent the questioning by the trial court appeared lengthy, the length of the questioning was mitigated by the trial court's reasonable effort to clarify defendant's testimony and elicit additional evidence to determine whether it was proper to read a claim of right instruction, which was in dispute. This factor therefore weighs against the presence of bias.

Under the fourth factor, which considers the extent to which the trial judge's conduct was directed at one side more than the other, *Stevens*, 498 Mich at 164, as already discussed, the trial court engaged in questioning of defendant. However, the trial court also engaged in questioning McCosky. Importantly, during the questioning, the trial court expressed confusion in the presence of the jury over exhibits McCosky helped create. McCosky herself demonstrated confusion at times in response to the trial court's questions. Defendant nonetheless argues the trial court's conduct was more directed at defendant because the court was "unnecessarily brusque" with trial counsel at certain points. When considered in context, however, the trial court's now-challenged exchanges with trial counsel merely amounted to the trial court ruling on the prosecutor's

---

[3] In so concluding, we did not consider the recordings of portions of the trial court proceedings, which were provided on appeal by the prosecutor.

objections and attempting to control the trial proceeding. This was within the trial court's discretion. MCL 768.29; *Conley*, 270 Mich App at 307. Importantly, "[a] trial judge's rulings or opinions do not pierce the veil of judicial impartiality unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *People v Willis*, 322 Mich App 579, 590; 914 NW2d 384 (2018). The trial court did not exhibit deep-seated favoritism or antagonism in this case, and this factor weighs against bias.

Under the fifth *Stevens* factor, we must consider the presence of any curative instructions. *Stevens*, 498 Mich at 164. Curative instructions weigh against the presence of partiality toward one party, but are not dispositive. *Id*. at 190. Here, the jury was instructed at the beginning of trial and the end of trial that they were the only judges of the facts and, to the extent they believed the trial court held on opinion, they were to disregard it when reaching a verdict. Jurors are presumed to follow the instructions given by the trial court. See *Stevens*, 498 Mich at 177. Although the instructions may have been more effective had they included an explicit reference to certain lines of questioning, the instructions were sufficient to protect defendant's substantial rights, especially when considering they were given before and after defendant's testimony. Thus, the fifth *Stevens* factor weighs against bias.

In sum, the totality of the circumstances does not demonstrate a reasonable likelihood the trial court's conduct during trial improperly influenced the jury to convict defendant on Count I's lesser included offense. Defendant has failed to establish plain error affecting substantial rights. He is therefore not entitled to relief.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello